1

**LYNCH CARPENTER LLP**
Todd D. Carpenter (CA 234464)
todd@lcllp.com
Scott G. Braden (CA 305051)
scott@lcllp.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone:  619.762.1910
Facsimile:   619.756.6991

2

3

4

5

6   *Attorneys for Plaintiff and
    Proposed Class Counsel*

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| JAIMIE HERNANDEZ, on behalf of herself and all others similarly situated, | Case No.  5:22-cv-834 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Violations of:** |
| RETAIL ECOMMERCE VENTURES LLC, a Delaware Limited Liability Company, and DOES 1- 50, inclusive, | 1.  **California's Unfair Competition Laws ("UCL")**, CAL. BUS. & PROF. CODE §§ 17200, *et seq.*; |
| Defendants. | 2.  **California's False Advertising Laws ("FAL")**, CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; |
| | 3.  **California Consumer Legal Remedies Act ("CLRA")**, CAL. CIV. CODE §§ 1750, *et seq.*; |
| | **[DEMAND FOR JURY TRIAL]** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Jaimie Hernandez ("Plaintiff") bring this action on behalf of herself and all others similarly situated against Defendant Retail Ecommerce Ventures LLC ("Defendant" or "REV"), and states:

## I.    NATURE OF THE ACTION

1.    Discounts of products benefit both sellers and their customers—when they are legitimate. To the detriment of consumers, as stated by the Ninth Circuit, sellers are "well aware of consumers' susceptibility to a bargain, [and] therefore have an incentive to lie to their customers." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013). Products perceived by consumers as discounted are thus not always actual bargains, and consumers' perceptions can stem directly from sellers' deceptions. This class action seeks monetary damages, restitution, declaratory and injunctive relief from Defendant arising from its own deceptive business practice of advertising fictitious "original" prices and corresponding phantom discounts on its e-commerce website, dressbarn.com, where it sells women's clothing and other related items.

2.    False reference pricing occurs when a seller fabricates a false "original" price for a product and then offers that product at a substantially lower price under the guise of a sale. The resulting artificial price disparity misleads consumers into believing the product they are buying has a higher market value, and it induces them into purchasing the product. This practice artificially inflates the true market price for these products by raising consumers' internal reference price and in turn the value consumers ascribe to these products (i.e., demand). Consequently, false reference pricing schemes enable retailers, like Defendant, to sell products above their true market price and value—and consumers are left to pay the price.

3.    The following example of a hypothetical DVD seller, which is parallel to Defendant's deceptive business practice, illustrates the illegal false reference pricing scheme and its attendant harm to consumers. A seller knows it can sell a particular DVD at $5.00, which represents both the market price and the price at which the seller could regularly offer the DVD and make a profit. Instead, however, the seller creates an inflated

"original" price for the DVD of $100.00 and advertises the DVD as "on sale" at **90% off** rendering the **"sale" price** of the DVD $10.00. When a consumer purchases the DVD, he presumes he got a "good deal" on a DVD previously sold—i.e., valued by others in the market—at an "original" price of $100.00. The consumer's presumption and purchase stem directly from the seller's purposeful deception. For example, if the seller tried to sell that same DVD for $10.00 **without** referencing a false original price of $100.00, and the attendant 90% off discount, that seller would not be able to sell any DVDs at $10.00 because the true, original market price of the DVD is $5.00. In contrast, by presenting consumers with a false "original" price of $100.00, consumers will purchase the DVD at $10.00; the seller thus has fabricated an increase in demand for the DVD through the **perceived value** of both the DVD itself and the substantial discount of $90.00. Consumers' increased willingness and demand to pay $10.00 for the DVD will in turn impact the overall market price of the DVD. Therefore, the seller can create a false market price for the DVD at $10.00 by advertising a false "original" price and a corresponding phantom discount of 90% off. Plaintiff's case seeks to remedy this deception, its attendant harm to consumers, and that disparity—the impact on the increase in market price through Defendant's application of an illegal discounting scheme.

4.     It is well-established that false reference pricing violates state and federal law. Even so, sellers, including REV, continue to use the tactic because they know they will be able to increase sales and profits by tricking consumers into making purchasing decisions based on the advertised reference prices. The information available to consumers varies for different types of products; nonetheless, consumers frequently lack full information about products and as a result often use information from sellers to make purchase decisions.

5.     Through its false and misleading marketing, advertising, and pricing scheme alleged herein, REV violated, and continues to violate, federal law and various state consumer protection laws, which prohibit the advertisement of goods for sale discounted from false former prices. These laws also prohibit the dissemination of misleading

statements about the existence and amount of price reductions. Specifically, Defendant violated and continues to violate:

      a.    California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*;

      b.    California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *et seq.*; and

      c.    California Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*

6.    Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased one or more products through dressbarn.com that were deceptively represented as discounted from a false reference price. Plaintiff seeks to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased products tainted by this deceptive pricing scheme. Plaintiff also seeks to enjoin Defendant from using false and misleading misrepresentations regarding former price comparisons in its labeling, marketing, and advertising permanently. Furthermore, Plaintiff seeks to obtain actual, statutory, and punitive damages, restitution, injunctive relief, reasonable costs and attorneys' fees, and other appropriate relief in the amount by which Defendant was unjustly enriched as a result of its sales offered at a false discount.

## II.    JURISDICTION AND VENUE

7.    This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class (defined below) have a different citizenship from Defendant.

8.    The Central District of California has personal jurisdiction over Defendant and is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) in the Plaintiff resides and was injured in this district wherein a substantial part of the events or omissions giving

rise to her claims occurred. Further, Defendant is a corporation or other business entity that conducts substantial business in this district and has sufficient minimum contacts in California, and/or otherwise intentionally avail itself to the California market through the operation of its e-commerce website dressbarn.com.

## III. GENERAL ALLEGATIONS

### A. Retailers Benefit from False Reference Pricing Schemes.

9. REV engages in a false and misleading reference price scheme in the marketing and selling of its products on its e-commerce website dressbarn.com.

10. Sellers substantially benefit from employing false reference pricing schemes and experience increased sales because consumers use advertised reference prices to make purchase decisions. The information available to consumers can vary significantly amongst different types of products.[1] Nonetheless, consumers frequently lack fundamental information about a product and as a result often rely on information from sellers to make purchase decisions, especially when a product's value or quality is otherwise difficult to discern.[2]

11. Consumers incorporate Defendant's deceptive advertised reference prices into decision processes for a few reasons. First, a product's "price is also used as an indicator of product quality."[3] In other words, consumers view Defendant's deceptive advertised

---

[1] Even within a product, consumers may have imperfect information on the individual attributes. Economists describe "search goods" as those whose attributes "can be ascertained in the search process prior to purchase" (*e.g.*, style of a shirt), "experience goods" as those whose attributes "can be discovered only after purchase as the product is used" (*e.g.*, longevity of a shirt), and "credence goods" as those whose attributes "cannot be evaluated in normal use" (*e.g.*, whether the shirt's cotton was produced using organic farming methods). Darby, Michael R., and Edi Karni. "Free Competition and the Optimal Amount of Fraud." *The Journal of Law and Economics* 16 no. 1 (1973): 67-88, pp. 68-69.

[2] "Not only do consumers lack full information about the prices of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain". Nelson, Phillip. "Information and Consumer Behavior." *Journal of Political Economy* 78, no. 2 (1970): 311-329, pp. 311-312. *See also* David Adam Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921, 935 (2016).

[3] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 54. *Also see* Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 212 ("The [reference price] will be more successful as a reference price the less

reference prices as a proxy for product quality. Second, reference prices "appeal[] to consumers' desire for bargains or deals."[4] Academic researchers note how consumers "sometimes expend more time and energy to get a discount than seems reasonable given the financial gain involved," and "often derive more satisfaction from finding a sale price than might be expected on the basis of the amount of money they actually save."[5] Under this concept, coined "transaction utility" by Noble Prize-winning economist Richard Thaler, consumers place some value on the psychological experience of obtaining a product at a perceived bargain.[6]

12.    Research in marketing and economics has long recognized that consumer demand can be influenced by "internal" and "external" reference prices.[7] Internal reference prices are "prices stored in memory" (*e.g.*, a consumer's price expectations adapted from past experience) while external reference prices are "provided by observed stimuli in the purchase environment" (*e.g.*, a "suggested retail price," or other comparative sale price).[8] Researchers report that consumer's internal reference prices adjust toward external reference prices when valuing a product.[9] For products purchased infrequently, external

---

often the good is purchased. The [reference price] is most likely to serve as a proxy for quality when the consumer has trouble determining quality in other ways (such as by inspection)").

[4] Grewal, Dhruv, and Larry D. Compeau. "Comparative price advertising: Informative or deceptive?" *Journal of Public Policy & Marketing* (1992): 52-62, p. 52.

[5] Darke, Peter and Darren Dahl. "Fairness and Discounts: The Subjective Value of a Bargain." *Journal of Consumer Psychology* 13, no 3 (2003): 328-338, p. 328.

[6] "To incorporate … the psychology of buying into the model, two kinds of utility are postulated: *acquisition utility* and *transaction utility*. The former depends on the value of the good received compared to the outlay, the latter depends solely on the perceived merits of the 'deal'". Thaler, Richard. "Mental Accounting and Consumer Choice." *Marketing Science* 4, no. 3 (1985): 199-214, p. 205.

[7] Empirical results "suggest that internal reference prices are a significant factor in purchase decisions. The results also add empirical evidence that external reference prices significantly enter the brand-choice decision." Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 68.

[8] Mayhew, Glenn E. and Russell S. Winer. "An Empirical Analysis of Internal and External Reference Prices using Scanner Data." *Journal of Consumer Research* 19, no. 1 (1992): 62-70, p. 62.

[9] "Buyers' internal reference prices adapt to the stimuli prices presented in the advertisement. That is, buyers either adjust their internal reference price or accept the advertised reference price to make judgments about the product's value and the value of the

reference prices can be particularly influential because these consumers have little or no prior internal reference.[10]  In other words, "[t]he deceptive potential of such advertised reference prices are likely to be considerably higher for buyers with less experience or knowledge of the product and product category."[11] Academic literature further reports that "there is ample evidence that consumers use reference prices in making brand choices"[12] and publications have summarized the empirical data as follows:

> Inflated reference prices can have multiple effects on consumers. They can increase consumers' value perceptions (transaction value and acquisition value), reduce their search intentions for lower prices, increase their purchase intentions, and reduce their purchase intentions for competing products … Inflated and/or false advertised reference prices enhance consumers' internal reference price estimates and, ultimately, increase their perceptions of value and likelihood to purchase[.][13]

13. Sellers, including Defendant, understand consumers are vulnerable to perceived bargains. Thus, Defendant has a substantial financial interest in exploiting consumers' well-known behavioral tendencies by inducing consumers into believing they are receiving a bargain—even when they are not. The phenomena of people disproportionately relying on an initial piece of information when making a decision, known

---

deal." Grewal, Dhruv, Kent B. Monroe, and Ramayya Krishnan. "The Effects of Price-Comparison Advertising on Buyers' Perceptions of Acquisition Value, Transaction Value, and Behavioral Intentions." *The Journal of Marketing* 62 (1998): 46-59, p. 48.

[10] As Thalen notes, "the [suggested retail price] will be more successful as a reference price the less often the good is purchased." Thaler, Richard. "Mental Accounting and Consumer Choice." Marketing Science 4, no. 3 (1985): 199-214, p. 212.

[11] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

[12] Kalyanaram, Gurumurthy, and Russell S. Winer. "Empirical Generalizations from Reference Price Research." *Marketing Science* 14, no. 3 (1995): G161-G169, p. G161.

[13] Grewal, Dhruv, and Larry D. Compeau. "Pricing and public policy: A research agenda and an overview of the special issue." *Journal of Public Policy & Marketing* 18, no. 1 (1999): 3-10, p. 7.

as "anchoring,"[14] is especially relevant in this context.[15] Reference prices are often the *first*, if not the *only*, insight into a product besides the sale price itself. Thus, consumers use the reference price as a baseline upon which to perceive a product's value.

### B. California and Federal Pricing Regulations Prohibit False "Original price" references and Out-Dated "Original price" references.

14.     Under California law, a seller may only discount an item from its own ***original price*** for up to 90 days; or in the alternative, a seller may offer a discount from the original price of an item being offered by a competitor, within the relevant market, for up to 90 days. In either scenario, a seller can only offer a "sale" from an original price for 90 days. At that point, on day 91, the seller has two options: the product must either return to its full original price, or the seller may continue to sell the product at the discounted price, ***as long as it discloses to the consumer the date on which the product was last offered for sale at its alleged former price***. *See* BUS. & PROF. CODE § 17501. Under California law, a seller cannot use an old, outdated, "original price" as the basis for a sale or discount, unless it discloses to the consumer the date on which the prior original price was offered in the market. *Id.*

15.     Additionally, laws in the State of California expressly prohibit making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions." *See* CAL. CIV. CODE § 1770(a)(13).

16.     Further, under the FTCA, when a seller offers a discount from ***its own***, former ***original price***, the original price is required to have been a price at which ***the seller*** held that item out for sale ***on a regular basis,*** for a ***commercially reasonable period of time***. *See* 16 C.F.R. § 233.1(a) and (b).

---

[14] *See* Program on Negotiation, *Anchoring Effect*, HARV. L. SCH., http://www.pon.harvard.edu/tag/anchoring-effect ("[T]he anchoring effect, [is] the tendency for the first offer to "anchor" the bargaining that follows in its direction, even if the offer recipient thinks the offer is out of line.").

[15] Friedman, *supra* note 2, at 933.

**C.    Defendant's Fraudulent Price Discounting Scheme Violates California and Other Federal Regulations.**

17.    Defendant engages in a false and misleading reference price scheme in the marketing and selling of the products offered on its e-commerce website dressbarn.com. Defendant advertises women's clothing and other related items for sale by listing them with a fictitious original price and a corresponding sale price.  The original price communicates "the product's worth and the prestige that ownership of the product conveys." *Hinojos*, 718 F.3d at 1106 (*citing* Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."). "Misinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

18.    Defendant consistently advertises its products on its e-commerce website dressbarn.com alongside an "original" price and the corresponding sale price. Defendant advertises a seemingly original price, in truth a false reference price, with a "strikethrough." The false reference price operates as a baseline consumers rely on to assess a product's value. Moreover, it is shown alongside the original price to communicate to consumers that Defendant is selling a product at a substantial discount, even though the product is not in fact discounted. The sale price displayed directly next to the false reference price conveys the "deep discount" at which Defendant presently offers a product, ostensibly for a limited time.

19.    However, the products sold on Defendant's e-commerce website dressbarn.com are never sold at the price displayed with a strikethrough—the price consumers are led to presume is the full original price. The "deep discount" of products communicated to consumers viewing Defendant's e-commerce website dressbarn.com constitutes a misrepresentation by Defendant. The "original" price merely serves as a false reference price Defendant uses as part of a larger scheme to deceptively manufacture false discounts to incentivize consumers to make purchases.

20.    To reiterate, the products sold on dressbarn.com show the original price with a strikethrough alongside the corresponding sale price immediately next to a picture of the product. For example, as seen in Exhibit A, a product entitled "Secret Agent Tummy Control Pants – Average Length" shows an "original" price of "~~$48.95~~" directly next to the sale price of "$36.95." Defendant lists the false reference price with a strikethrough, which suggests to customers that Defendant previously offered its products at the strikethrough price. Attached hereto as Exhibit A are numerous snapshots from dressbarn.com acquired through the Wayback Machine—a well-regarded archive of internet webpages as they existed at a singular point in time—depicting the false reference pricing scheme, including of the product used in the above-mentioned example.

21.    Defendant's purposeful practice operates by deceiving consumers into (1) making purchases they otherwise would not have made and (2) paying substantially more for products they believed are heavily discounted and thus worth more than their actual value. The only plausible explanation for Defendant's above illustrated practice is to drive sales, artificially inflate the perceived value of its products, and, as a result, artificially inflate the price at which consumers are willing to buy its products. Defendant has, and without intervention will continue to, increase sales by creating the illusion of short-lived bargains through purporting to offer products on sale from false original prices.

22.    Defendant's perpetual listings of its products as discounted on its e-commerce website dressbarn.com constitute false, fraudulent, and deceptive advertising because the advertised reference prices it displays list substantially higher prices than those ever offered by Defendant. The reference prices only serve to deceive consumers; they function as benchmark prices from which the false discount and corresponding "sale" price are derived. Defendant's scheme tricks consumers into justifiably believing they are getting a significant deal when, in reality, consumers are paying the usual retail price for products.

23.    In sum, the false reference prices, the strikethrough of said prices, and the sale prices all displayed next to each other on product listing pages on Defendant's e-commerce website dressbarn.com are all part of Defendant's purposeful, deceptive scheme. The

products sold through Defendant's e-commerce website dressbarn.com are never offered for sale, nor sold, at the advertised false reference price. Defendant advertises false reference prices with a purpose to induce consumers into believing its products were once sold at said price. The strikethrough of the false reference prices next to products creates a false sense of urgency in consumers. Defendant intends for consumers to be misled that Defendant will sell its products at the advertised, higher reference price "again" if they do not purchase its products soon; and consumers are misled. Consumers believe they are receiving a substantial bargain when they purchase products on Defendant's e-commerce website at the "discounted" sale price. However, Defendant did not actually sell products on its e-commerce website dressbarn.com at the advertised reference prices within 90 days of discounting them. In fact, Defendant never offered or sold products at their advertised false reference price, and consumers thus never received a true bargain. All while fully aware of its deception, Defendant has achieved, and might continue to achieve, its ultimate, continuing purpose of driving sales with sham markdowns.

24. Nowhere on Defendant's e-commerce website dressbarn.com does Defendant disclose that the reference or "original" prices displayed are not: former prices; or recent, within 90 days, regularly offered former prices; or prices at which identical products are sold elsewhere in the market. The omission of these disclosures, coupled with Defendant's use of fictitious advertised reference prices, renders Defendant's pricing scheme inherently misleading.

25. Moreover, the advertised discounts were fictitious because the reference prices did not represent a *bona fide* price at which Defendant previously sold or offered to sell the products, on a regular basis, for a commercially reasonable period of time, as required by the Federal Trade Commission ("FTC"). In addition, the represented advertised reference prices were not the prevailing market retail price within the three months (90 days) immediately preceding the publication of the advertised former reference price, as required by California law.

26.     Thus, Defendant's scheme intends to, and does, provide misinformation to the customer.  This misinformation communicates to consumers, including Plaintiff, that the products sold on Defendant's e-commerce website dressbarn.com have greater value than the advertised discounted price.

27.     The reference prices listed and advertised on products sold through Defendant's e-commerce website dressbarn.com are false or severely outdated reference prices, utilized only to perpetuate Defendant's false discount scheme.

28.     Defendant knows that its reference price advertising is false, deceptive, misleading, and unlawful under state and federal law.

29.     Defendant fraudulently concealed from, and intentionally failed to disclose to, Plaintiff and other members of the Class the truth about its advertised discount prices and former reference prices.

30.     At all relevant times, Defendant has been under a duty to Plaintiff and the Class to disclose the truth about its false discounts.

**D.    Investigation**

31.     Products sold on REV's e-commerce website dressbarn.com are priced uniformly. In other words, the products sold by Defendant bears a substantially discounted sale price that appears next to the "crossed out" or "strikethrough" original price. Plaintiff's counsel's investigation confirmed that the merchandise purchased by Plaintiff was priced with a false reference price and a corresponding discounted price for at least the 90-day period immediately preceding Plaintiff's purchase in violation of California law. The merchandise purchased by Plaintiff was not, and is not, offered for sale in any other market.

32.     Plaintiff's counsel conducted a thorough investigation of Defendant's website. Plaintiff's counsel deployed a sophisticated software program to track each item offered for sale on the dressbarn.com website. Plaintiff's counsel tracked the pricing of certain merchandise offered for sale through dressbarn.com various periods from 2020 through the present. A sample of the items tracked are attached as Exhibit B. For the duration of the tracking period, each product remained significantly discounted from its reference price.

The investigation indicated the false reference pricing scheme was uniform across Defendant's e-commerce website dressbarn.com.

33.    Plaintiff's counsel also researched Defendant's e-commerce website dressbarn.com through the Wayback Machine. The website snapshots recorded by the Wayback Machine are consistent with Plaintiff's counsel's investigation. As a result, Plaintiff's counsel's investigation has tracked nearly every item on Defendant's website from 2020 through the present.

34.    The false reference price and corresponding discount price scheme were both uniform and identical on almost all products sold through Defendant's e-commerce website dressbarn.com. The only change was the requisite "discount" on certain products.

35.    Thus, the fraudulent price scheme applies to all products offered for sale through Defendant's e-commerce website dressbarn.com, including the products purchased by Plaintiff. Thus, the fraudulent price scheme applies to all products offered for sale through Defendant's e-commerce website dressbarn.com, including the product purchased by Plaintiff.

## IV.   PARTIES

### Plaintiff

36.    Plaintiff Jaimie Hernandez resides in Fontana, California. Plaintiff, in reliance on Defendant's false and deceptive advertising, marketing and discounting pricing schemes, purchased the following items online from Fontana, California on or around April 1, 2022:

| No. | Item: | False Reference Price: | Sale Price paid by Plaintiff: |
|---|---|---|---|
| 1 | Westport Signature Skinny Ankle Jeans with Snap Button At Ankle | $56.95 | $33.32 |
| 2 | 2 Piece Lounge Set | $84.95 | $49.70 |
| 3 | Havaianas Women's H. L. Metallic Rubber Sandal | $18.99 | $11.11 |
| 4 | Adrienne Vittadini Fringe Detail With Hood Cardigan | $60.95 | $35.66 |

37.     Plaintiff examined each of the above-listed products on Defendant's website dressbarn.com before deciding to purchase the aforementioned items after reviewing the item's advertised sale price. The items Plaintiff purchased were advertised as having an original price, which had a strikethrough over it on the website. Defendant advertised the items as having a sale price at a discount for each item.

38.     After observing the original price of the items and the accompanying the sale price, Plaintiff believed she was receiving a significant discount on the products she had chosen. Because she was interested in the products and felt that the discounted price would likely not last, and that she was getting a significant bargain on the products, she proceeded to finish checking out and purchased them.

39.     However, the products that Plaintiff purchased were never offered for sale at the original price listed on Defendant's e-commerce website and certainly not within the 90 days preceding Plaintiff's purchase. Neither Plaintiff's receipt nor any other language on the website observed or relied upon by Plaintiff indicated that the products were not offered previously at the advertised reference price.

40.     Plaintiff reasonably relied upon Defendant's artificially inflated reference prices and false discounts when purchasing products from Defendant's e-commerce website dressbarn.com. Plaintiff would not have made such purchases but for Defendant's representations regarding the substantial discount being offered for the products. Plaintiff would like to continue buying from Defendant's e-commerce website in the future but cannot be certain of the veracity of Defendant's advertised bargains.

41.     Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendant advertised, and they made purchases believing they were receiving a substantial discount on products of greater value than the value they had in actuality. Plaintiff, like other Class members, was lured in, relied on, and was damaged by the deceptive pricing scheme Defendant carried out.

42.     Plaintiff was damaged in her purchases because Defendant's false reference price discounting scheme inflated the true market value of items she purchased. Plaintiff is

susceptible to this reoccurring harm because she cannot be certain that Defendant has corrected this deceptive pricing scheme and she desires to shop at Defendant's e-commerce website dressbarn.com in the future. However, she currently cannot trust that Defendant will accurately price its products truthfully and in a non-misleading fashion in compliance with applicable law. Plaintiff does not have the resources on her own to determine whether Defendant is complying with State and Federal law with respect to its pricing practices.

43.    Additionally, because of the wide selection of items available on Defendant's website, and due to the likelihood that Defendant may yet develop and market additional falsely priced items for sale online, Plaintiff may again, though by mistake, purchase a falsely discounted item from Defendant under the impression that the advertised reference price represented a *bona fide* former price at which the item was previously offered for sale by Defendant. Indeed, Plaintiff desires to continue purchasing items from dressbarn.com in the future. Moreover, Class members will continue to purchase products from dressbarn.com while reasonably but incorrectly believing that their advertised reference prices represent *bona fide* former prices at which they were previously offered for sale by Defendant.

44.    Absent an equitable injunction enjoining Defendant from continuing in the unlawful course of conduct alleged herein, Plaintiff, Class members and the public will be irreparably harmed and denied an effective and complete remedy because they face a real and tangible threat of future harm emanating from Defendant's ongoing conduct that cannot be remedied with monetary damages. Accordingly, Plaintiff, Class members, and the general public lack an adequate remedy at law and an injunction is the only form of relief which will guarantee Plaintiff and other consumers the appropriate assurances.

45.    Moreover, Plaintiff lacks an adequate remedy at law with respect to her claim for equitable restitution because she has not yet retained an expert to determine whether an award of damages can or will adequately remedy her monetary losses caused by Defendant. Particularly, as legal damages focus on remedying the loss to the plaintiff and equitable restitution focuses wholly distinctly on restoring monies wrongly acquired by the defendant,

legal damages are inadequate to remedy Plaintiff's loss because Plaintiff does not know at this juncture, and is certainly not required to set forth evidence, whether a model for legal damages (as opposed to equitable restitution) will be viable or will adequately compensate Plaintiff's losses.

46.   Finally, Plaintiff's case is substantially predicated on Defendant's violation of CAL BUS. & PROF. CODE § 17501, an equitable claim, as Plaintiff's counsel's investigation revolved around ensuring that Defendant did not sell products at the indicated reference price within the 90 days preceding Plaintiff's purchase and, likewise, that Defendant failed to disclose to consumers the date on which products was last offered at its advertised reference price. This claim and test of liability go to the heart of Plaintiff's case and the same test is not available under a CLRA legal claim for damages. Thus, Plaintiff does *not* have an adequate remedy at law because the CLRA does not provide the same metric of liability as CAL BUS. & PROF. CODE § 17501, which is integral not only to Plaintiff's prayer for restitution, but also to Plaintiff's very theory of liability at trial.

**Defendant**

47.   Plaintiff is informed and believes, and upon such information and belief alleges, Defendant is a limited liability company organized under the laws of Delaware with its principal executive offices in Miami Beach, Florida. Defendant operates the dressbarn.com website, and advertises, markets, distributes, and/or sells women's retail products in California, and throughout the United States.

48.   Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-50, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants are in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## V.   CLASS ALLEGATIONS

49.   Plaintiff brings this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant:

> All persons, within the State of California, who, within the applicable statutory period (the "Class Period"), purchased from REV's e-commerce website dressbarn.com, one or more products at discounts from an advertised reference price and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Defendant, as well as its officers, employees, agents or affiliates, parent companies and/or subsidiaries, and each of their respective officers, employees, agents or affiliates, and any judge who presides over this action. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclass, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

50.   ***Numerosity***: Members of the Class are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that the proposed Class contains at least thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time, but Plaintiff expects it can readily be established through Defendant's records.

51.   ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

a.   whether, during the Class Period, Defendant used advertised false reference prices on products sold through its e-commerce website;

b.   whether, during the Class Period, the original price advertised by Defendant was the prevailing market price for the products in question during the

three months period preceding the dissemination and/or publication of the advertised former prices;

  c. whether Defendant's alleged conduct constitutes violations of the laws asserted;

  d. whether Defendant engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

  e. whether Defendant engaged in false or misleading advertising;

  f. whether Plaintiff and members of the Class are entitled to damages and/or restitution and the proper measure of that loss;

  g. whether an injunction is necessary to prevent Defendant from continuing to use false, misleading or illegal price comparison; and

  h. whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

52. ***Typicality***: Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all members of the Class have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all members of the Class.

53. ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

54. ***Superiority***: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual members of the Class is relatively modest compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for

Plaintiff and members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, members of the Class and the general public would not likely recover, or would not likely have the chance to recover, damages, restitution, or injunctive relief, and Defendant will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

55.    All members of the Class, including Plaintiff, were exposed to one or more of Defendant's misrepresentations or omissions of material fact in advertising false reference prices. Due to the scope and extent of Defendant's consistent false sale prices, advertising scheme, disseminated in a constant years-long campaign to consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all members of the Class, including Plaintiff, affirmatively acted in response to the representations contained in Defendant's false advertising scheme when purchasing products sold through Defendant's e-commerce website dressbarn.com.

56.    ***Ascertainability:*** Defendant keeps extensive computerized records of its customers through, *inter alia*, customer rewards programs and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.    CAUSES OF ACTION

### **FIRST CAUSE OF ACTION**

**Violation of California's Unfair Competition Law ("UCL")**
**CAL. BUS. & PROF. CODE §§ 17200, *et seq.***

57.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

58.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant REV for violations of the UCL, CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

59.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. CAL. BUS. PROF. CODE § 17200.

60.    The UCL imposes strict liability. Plaintiff and members of the Class need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

**"Unfair" Prong**

61.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

62.    Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted phantom "sale" prices. Defendant's acts and practices offended an established public policy of transparency in pricing, and constituted immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

63.    The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices because Defendant's practice of advertising false discounts provides no utility and only harms consumers. There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

**"Fraudulent" Prong**

64.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

65.    Defendant's acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff and members of the Class and are highly likely to deceive members of the consuming public. Plaintiff and members of the Class relied on Defendant's fraudulent and deceptive representations regarding its false or outdated "original prices" for products sold by Defendant through its e-commerce website dressbarn.com. These misrepresentations played a substantial role in Plaintiff's and members of the Class's decision to purchase the product at a purportedly steep discount, and Plaintiff and members of the Class would not have purchased the product without Defendant's misrepresentations.

**"Unlawful" Prong**

66.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

67.    Defendant's act and practices alleged above constitute unlawful business acts or practices as it has violated state and federal law in connection with its deceptive pricing scheme. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the FTC, false former pricing schemes, like Defendant's, are described as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – ***for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he

expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made.  The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

68.    In addition to federal law, California law also expressly prohibits false former pricing schemes.  The FAL, CAL. BUS. & PROF. CODE § 17501, entitled "*Worth or value; statements as to former price*," states:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

CAL. BUS. & PROF. CODE § 17501 (emphasis added).

69.    As detailed in Plaintiff's Third Cause of Action below, the CLRA, CAL. CIV. CODE § 1770(a)(9), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

70.     As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

71.     Defendant's practices, as set forth above, misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Defendant's practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

72.     Defendant's violations of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that members of the Class and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated "reference" prices and substantially discounted "sale" prices. These false comparisons created phantom markdowns and lead to financial damage for consumers like Plaintiff and the members of the Class.

73.     Pursuant to the UCL, Plaintiff and members of the Class are entitled to preliminary and permanent injunctive relief enjoining Defendant from further engagement in this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all Defendant's revenues wrongfully obtained from them as a result of Defendant's unfair competition, or such portion of those revenues as the Court may find equitable.

## SECOND CAUSE OF ACTION

**Violation of California's False Advertising Law ("FAL")**
**CAL. BUS. & PROF. CODE §§ 17500, *et seq.***

74.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

75.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant for violations of the FAL, CAL. BUS. & PROF. CODE §§ 17500, *et seq*.

76.     CAL. BUS. & PROF. CODE § 17500 provides:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of . . . personal property or to perform services, professional or

otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that . . . personal property or those services . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . .

(Emphasis added).

77.    The "intent" required by section 17500 is the intent to make or disseminate personal property (or cause such personal property to be made or disseminated), and not the intent to mislead the public in the making or dissemination of such property.

78.    Similarly, this section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." CAL BUS. & PROF. CODE § 17501.

79.    Defendant's routine practice of advertising discounted prices from false reference prices, which were never the prevailing market prices of those products and were materially greater than the true prevailing prices (i.e., Defendant's actual sale price), constitutes an unfair, untrue, and misleading practice. Defendant's deceptive marketing practice gave consumers the false impression that the products on Defendant's e-commerce website dressbarn.com were regularly sold on the market for a substantially higher price than the price for which they were sold in actuality. Moreover, Defendant's deceptive marketing practice misled consumers by creating a false impression that the products sold through its e-commerce website were worth more than their actual worth.

80.    Defendant misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

81.    As a direct and proximate result of Defendant 's misleading and false advertisements, as well as Defendant's deceptive and unfair acts and practices made during the course of Defendant's business, Plaintiff and members of the Class suffered ascertainable loss and actual damages.

82.    Plaintiff and members of the Class request that this Court order Defendant to restore this money to Plaintiff and all members of the Class, and to enjoin Defendant from continuing these unfair practices in violation of the FAL in the future. Otherwise, Plaintiff, members of the Class, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

## THIRD CAUSE OF ACTION

**Violation of California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.***

83.    Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

84.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant REV for violations of the CLRA, CAL. CIV. CODE § 1750, *et seq*.

85.    Plaintiff and each member of the proposed Class are "consumers" as defined by CAL. CIV. CODE § 1761(d). Defendant's sale of products through its e-commerce website, dressbarn.com, were "transactions" within the meaning of CAL. CIV. CODE § 1761(e). The products purchased by Plaintiff and members of the class are "goods" or "services" within the meaning of CAL. CIV. CODE §§ 1761(a) - (b).

86.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by CAL. CIV. CODE § 1770(a) in transactions with Plaintiff and members of Class which were intended to result in, and did result in, the sale of products sold through its website:

    a.    advertising goods or services with intent not to sell them as advertised; § 1770(a)(9); and

b.     making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; § 1770(a)(13).

87.     On May 18, 2022, Plaintiff through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. If Defendant does not respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782, Plaintiff will amend her complaint to seek actual, punitive, and statutory damages, as appropriate against Defendant.

88.     Filed concurrently herewith is a declaration of venue pursuant to CAL. CIV. CODE §1780(d).

## VII.   PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of herself and all other members of the Class, requests that this Court award relief against Defendant as follows:

a.     an order certifying the Class and designating Plaintiff as the Class Representative and her counsel as Class Counsel;

b.     awarding Plaintiff and members of the Class restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

c.     awarding Plaintiff and members of the Class actual, statutory, and punitive damages;

d.     awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its misconduct and pay them all money they are required to pay;

e.    order Defendant to engage in a corrective advertising campaign;

f.    awarding attorneys' fees and costs; and

g.    for such other and further relief as the Court may deem necessary or appropriate.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: May 18, 2022

**LYNCH CARPENTER, LLP**

By:  _/s/ Todd D. Carpenter_
Todd D. Carpenter (CA 234464)
todd@lcllp.com
Scott G. Braden (CA 305051)
scott@lcllp.com
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone:  (619) 762-1910
Facsimile:  (619) 756-6991

*Attorneys for Plaintiff and*
*Proposed Class Counsel*